### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**WILLIAM RESTER**                    **CIVIL ACTION NO.: 19-14616-WBV-DMD**

**VERSUS**                    **DISTRICT JUDGE  WENDY B. VITTER**

**HOME DEPOT U.S.A., INC.**                    **MAGISTRATE JUDGE:**
                                   **DANA M. DOUGLAS**
**********************************************************************
### MOTION FOR PROTECTIVE ORDER TO LIMIT PROPOSED
### RULE 30(b)(2) and (6) DEPOSITION OF HOME DEPOT U.S.A., INC.

### _AND REQUEST FOR EXPEDITED HEARING AND ORAL ARGUMENT_

Defendant, Home Depot, submits this Memorandum in Support of its Motion for Protective Order, as if incorporated therein *in extenso*, and requests this Honorable Court to grant its Motion, limiting the proposed Rule 30(b)(6) deposition of Home Depot ("corporate deposition" or "deposition").

The scope and breadth of the matters proposed for examination far exceed the bounds of relevancy and proportionality to the facts of this alleged slip and fall. Further, the deposition is primarily a fishing expedition, intended to follow up on an unsubstantiated theory of the case which was created well after suit was filed, attempting to implicate involvement of a pipe threader machine. This, combined with the overly broad, cumulative, and duplicative requests, suggest that the deposition is sought solely for the purposes of creating busy work and to harass Home Depot, as opposed to a genuine and reasonably tailored request for corporate testimony. As shown herein, Home Depot has offered many concessions and has demonstrated a willingness to produce a witness, in spite of and over its objections. Yet, after weeks of attempts to appropriately tailor the deposition—consisting of over forty (40) numbered topics and multiple sub-parts that near seventy (70) total proposed inquiries—Plaintiff has made only limited and minor adjustments to the scope of the

requested corporate deposition.[1] In light of the foregoing, and for the reasons set forth herein, Home Depot requests that the proposed corporate deposition of Home Depot be limited and tailored to what is appropriate under both the law and facts of this case and for any other relief which the Court may deem appropriate.

<u>**FACTUAL & PROCEDURAL BACKGROUND**</u>

This case stems from a garden variety slip and fall incident that is alleged to have occurred on July 12, 2019, at the Home Depot store in Slidell, Louisiana (the "Store" or "Home Depot 0386").[2] Specifically, Plaintiff alleges that a liquid was on the floor of Aisle 9 and was the cause of his fall; Plaintiff has testified that he cannot provide any identifying characteristics of any liquid alleged to have been on the floor.[3] Despite being a simple slip and fall case, Plaintiff has deposed four (4) Home Depot employees, including Ronald Weatherhead, the Store manager and investigating manager; Daniel Fontenot, an associate who was with Plaintiff at the time of the fall; Wayne Robinson, the relevant department supervisor; and Corey Crowe, the Store's asset protection specialist.[4]

The testimony demonstrates that Plaintiff's fall occurred at approximately 1:00 p.m. midway down Aisle 9, at Bay 13, in the plumbing department.[5] Daniel Fontenot, who was with Plaintiff at the time of the fall, testified that there was no liquid or water present on the ground in the area of Plaintiff's fall prior thereto; after the fact, he observed a small spot of water nearby.[6] There were no eyewitnesses to Plaintiff's fall, and the incident was not captured by the Store's security cameras.[7] Ronald

---

[1]    The Original Notice contained 45 proposed topics and, as amended, the Revised Notice contains 42 topics. See **Exhibit B**, Original Notice; *c.f.* **Exhibit E**, Revised Notice.

[2]    *See* R. Doc. 1, Complaint for Damages at ¶ IV; *see* **Exhibit I**, Deposition of William Rester at 21:6–11.

[3]    *See* **Exhibit I**, Rester Deposition at 25:8-22, 61:11-17.

[4]    *See* **Exhibit J**, Deposition of Daniel Fontenot at 39:15-17; **Exhibit K**, Deposition of Ronald Weatherhead at 9:17-24; **Exhibit L**, Deposition of Wayne Robinson at10:2-16, 12:15-13:6; **Exhibit M**, *under seal*, Deposition of Corey Crowe at 11:2-12:7.

[5]    *See* **Exhibit I**, Rester Deposition at 20:17-19; **Exhibit J**, Fontenot Deposition at 19:14-23, 20:14-21:15; **Exhibit K**, Weatherhead Deposition at 16:14-22, 18:1-10, 28:2-8.

[6]    *See* **Exhibit J**, Fontenot Deposition at 23:19-26:25, 37:8-38:1; 92:1-8.

[7]    *See* **Exhibit K**, Weatherhead Deposition at 36:15-23, 70:6-11; **Exhibit M**, *under seal*, Deposition of Corey Crowe at 29:3-19, 35:17-36:19.

Weatherhead, in investigating the incident, was unable to determine how the small spot of water came to be on the floor or how long it had been present.[8]

Wayne Robinson, who was simply the department supervisor at the time of Plaintiff's incident, has no personal knowledge of the incident.[9] During the course of his deposition, counsel for Plaintiff probed into an unrelated note on the opening checklist that stated that the "hazardous trash can's garbage" had been emptied that morning. Robinson explained that the garbage is located next to a pipe threader machine and "when you finish threading pipe, there's some cutting oil that you wipe off, and you throw the rags in the trash can, and that should be emptied."[10] The trash is checked daily, but the pipe threader isn't used every day.[11] He explained that the oil within the machine is self-contained.[12] Robinson also testified that if any of the oil drips on the floor near the machine, it's usually not more than a drop or two, and it wipes up easily with a towel without leaving any residue.[13] Finally, the pipe threader machine is located on the end of the aisle, at least 10 feet away from the area where plaintiff alleges he fell.[14] No witness has testified or suggested that oil was, in fact, on the floor.

Plaintiff originally propounded a grossly overbroad and inappropriate proposed notice of corporate deposition on December 28, 2020 ("Original NOD"), containing forty-five (45) numbered topics that brought the total number of topics to over seventy (70).[15] Plaintiff also moved for and was granted a continuance on certain deadlines,[16] predicated in part on the need for the discovery sought in the corporate deposition. Home Depot provided its objections and responses to the Original NOD on January 29, 2021, agreeing to produce a corporate witness to testify as to the corporate policies,

---

8   *See* **Exhibit K**, Weatherhead Deposition 38:5-13, 66:12-67:21; *see* **Exhibit K-1**, photograph.
9   *See* **Exhibit L**, Robinson Deposition at 13:4-15.
10  *See* **Exhibit L**, Robinson Deposition at 40:10-44:21.
11  *See* **Exhibit L**, Robinson Deposition at 41:12-19.
12  *See* **Exhibit L**, Robinson Deposition at 42:2-44:21.
13  *See* **Exhibit L**, Robinson Deposition at 46:5-47:10.
14  *See* **Exhibit L**, Robinson Deposition at45:4-12.
15  *See* **Exhibit B**, Original NOD.
16  *See* R. Doc. 26, 27, 28.

procedures, and training related to slip and fall prevention that were in effect at the time of the incident alleged (July 12, 2019).[17]

The parties held a discovery conference to meet and confer on the objections and Original NOD on February 4, 2021. Plaintiff thereafter provided a Revised Notice of Corporate Deposition ("ReNOD") on February 8, 2021, eliminating only three (3) topics.[18] The ReNOD contains the following topics, the vast majority of which lack reasonable particularity as required by Rule 30(b)(6), are wholly inappropriate topics for a corporate representative, and are overly broad, vague, irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, cumulative, and/or duplicative:

1. Your knowledge and investigation of the Incident.
2. Identify, describe, and discuss all documents, tangible items, video recordings, audio recordings, photographs and electronically stored information that you retained related to the Incident.
3. The identity of each and every person:
   a. Who you have determined was or may have been an eyewitness to the Incident;
   b. Who you have determined was or may have been in the vicinity or location of the Incident;
   c. Who you have determined observed the liquid that plaintiff William Rester slipped on;
   d. Who worked in the plumbing section of the Home Depot store number 0386 under supervisor Wayne Robinson and/or another plumbing supervisor on July 11, 2019, July 12, 2019 and/or at any time from July 10, 2018 through the present date;
   e. Who operated a pipe cutting or pipe threading machine in the Home Depot store number 0386 at any time from January 1, 2014 through the present date;
   f. Who cleaned up oil from the pipe cutting or pipe threading machine on the date of the incident on July 12, 2019 and/or on July 11, 2019.
   g. Who was the risk manager(s) of or for the Home Depot store 0386 at any time from July 12, 2014 to the present and/or on July 12, 2019 and immediately before that date.
4. The safety and/or other policies, practices, procedures, rules, standards, guidelines and/or protocols in effect on the date of the Incident related to slip-and-fall prevention at the Home Depot store number 0386.
5. All steps and measures that you take to prevent slip-and-falls at Home Depot stores nationwide.
6. Your policies, procedures, guidelines and/or protocols, written and unwritten, regarding inspections, maintenance, and/or cleaning of the Home Depot Store number 0386, including

---

[17]   *See* **Exhibit C**, Home Depot's Objections and Responses to the Original NOD. Home Depot contemporaneously provided Answers to Interrogatories and Requests for Production, attached hereto as **Exhibit D**, propounded on December 23, 2020; the answers were timely provided pursuant to a courtesy extension from counsel for Plaintiff.

[18]   *See* **Exhibit E**, ReNOD.

Aisle 09, the location where the Incident occurred.

7. All slip and fall accidents that occurred in the Home Depot store number 0386 at any time from January 1, 2014 through the present date.

8. Identify all industry standards, laws, rules, regulations, guidelines, protocols and/or ordinances with respect to floor safety and walkway surfaces that you followed at Home Depot store 0386 before and on the date of the Incident.

9. Your policies, practices, procedures, rules, guidelines and/or protocols, whether written or oral, for training employees, associates, agents, and/or contractors on identifying spills or hazardous conditions on the floors of Home Depot stores that pose or might pose a slipping or tripping hazard, eliminating, guarding against, minimizing and/or warning of such spills or hazards, inspection, maintenance, wet floor signs, and other preventative measures, including but not limited to at the location where the Incident occurred. Such policies, practices, and procedures should include those in effect on the date of the Incident up through and including the present date.

10. Your safety rules, regulations, guidelines, practices, procedures, protocols, standards, documents, manuals, safety meeting documents, In Focus Group documents, Home Depot Safety Committee documents and/or those of others required, promulgated, used, implemented by you and/or your employees that were in effect before and on the date of the Incident and are or may be relevant to the Incident, including but not limited to those having anything to do with:

    a. Identifying spills or hazardous conditions on the floors of Home Depot that pose or might pose a slipping or tripping hazard, assigning one or more persons in a store, including at the Home Depot store number 0386 to do this and only this task, and/or periodic inspections done throughout the day in the stores, including store 0386;

    b. Eliminating, guarding against, minimizing and/or warning of such spills or hazardous conditions, once the spill or the hazardous condition was identified and the means and methods that are available or are the be employed in order to do so;

    c. The cleaning of floors in Home Depot stores;

    d. The cleaning of oil on floors in Home Depot stores; and

    e. The operation of pipe cutting or pipe threading machines in Home Depot stores, including the locations and setup details within the store where such machines are or may be operated, its component parts and equipment and the cleanup of any oil, metal shavings, debris, and/or residue in connection with the operation of such machines.

11. All security logs, sweep logs, cleaning logs, inspection logs, and/or other documents showing or tending to show that the area of the Incident was inspected, maintained and/or cleaned or cleaned up, that wet floor signs, or other preventative measures were placed or taken at the area of the Incident, at any time from the day before the Incident through the date and time of the Incident.

12. How the floors at the Home Depot store number 0386 were cleaned daily or on a routine basis, including the machine and/or equipment used and the identity of the person(s) who did this cleaning on July 11, 2019 and July 12, 2019 before the time of the Incident.

13. All maintenance, inspection, cleanup and/or custodial records concerning the Home Depot store number 0386, from July 11, 2019 through July 13, 2019.

14. Any inspections of Aisle 09 of the Home Depot store number 0386 for hazardous or other substances on the floor of that store conducted at any time from July 6, 2019 to July 12, 2019, including the date and time of the inspections, who conducted the inspection, how the inspection was conducted, and the substance(s) found in the inspection.  Please produce and be prepared to discuss all documents concerning any such inspection.

15. Storewalk summary documents for the Home Depot store number 0386 from August 1, 2017 to August 1, 2019.

16. Following the Incident, Home Depot's cleanup of the liquid that plaintiff William Rester slipped on, including the identity of the person(s) who cleaned it up, what materials were used to clean up the liquid, and any photographs, memoranda, correspondence, or other documents concerning the cleanup and/or evaluations of or opinions from the person(s) who cleaned up the liquid as to the nature and type of liquid.

17. With regard to the pipe cutting/threading machine that was located on Aisle 09 of the Home Depot store number 0386 at the time of the Incident:

   a. Its make, model, serial or identifying number, the year it was manufactured, the year it was acquired by Home Depot, and how long it had been in use before the Incident;

   b. How Home Depot required that this machine be operated, used, maintained and cleaned by its employees;

   c. The type of oil used in its operation, including the type of oil used on or before the date of the Incident;

   d. How Home Depot required that its employees clean up any oil, metal shavings debris and/or residue from the use of the machine, and the materials used to clean up;

   e. The specific location of the machine on Aisle 09 on the date of the Incident;

   f. Other available locations in the Home Depot store number 0386 where the machine could be operated;

   g. Oil containment bins, pools, barriers, devices, absorbent rocks, liners and/or other materials used or supposed to be used around or underneath the machine; and

   h. The operators/operation, safety and/or other manuals and documents of or for this machine.

18. With regard to the photograph produced to plaintiff by counsel for Home Depot on December 8, 2020 depicting a pipe cutting/threading machine in the Home Depot Store number 0386, which is attached hereto as Exhibit A:

   a. The date the photograph was taken and who took it;

   b. Whether the pipe cutting/threading machine depicted in the attached photograph was the same pipe cutting/threading machine present on Aisle 09 of the Home Depot store number 0386 on the date and time of the Incident;

   c. The date when Home Depot first placed the oil containment bin or pool, absorbing rocks, and liner depicted in the photograph attached as Exhibit A underneath the pipe cutting/threading machine on Aisle 09 of the Home Depot store number 0386, whether those items were each underneath the pipe cutting/threading machine on Aisle 09 of the Home Depot store number 0386 on the date and time of the Incident; all of the reasons for the use of these items; and whether it was feasible to have used those items and did Home Depot have control over the use of those items, if they were not used or in place on the date and time of the Incident; and

   d. Whether the Ridgid Nu-Clear Cutting Oil depicted in the image was the same type of oil used by Home Depot with the pipe cutting/threading machine on the date of the Incident or, if not, the name of the oil that was used.

19. Any and all photographs of or for the pipe cutting/threading machine at the Home Depot store number 0386 taken before the July 12, 2019 Incident and the date of the photographs and the identity of the person(s) who took the photograph(s).

20. The creation, building, construction, assembly and/or installation of the oil containment bin or pool with absorbent rocks in which the pipe cutting/threading machine sits or was to sit as shown in the photograph provided by defense counsel to plaintiff's counsel on December 8, 2020, which is attached hereto as Exhibit A, the reason(s) of or for same and all documents

regarding same.

21. Your safety rules, regulations, procedures, practices, policies, guidelines, manuals, standards, training documents, safety meeting documents, In Focus documents, Home Depot Safety Committee documents and other documents concerning the use, operation, maintenance, cleaning, and cleanup following use, of pipe cutting/threading machines in Home Depot stores nationwide, including but not limited to:

    a. The locations where such machines may be operated under Home Depot policy, and whether Home Depot policy permits the operation of such machines in product aisles on which customers walk, whether such machines must be kept and used in a taped-off area, and/or whether, in practice, such machines are operated in product aisles in Home Depot stores,

    b. The operation of such machines and cleanup of oil, debris, or residue following the use of such machines, or prevention of oil, debris, or residue from getting on the ground; and

    c. The use of barriers, oil containment bins, pools or devices, absorbent rocks, liners, and/or other material to prevent oil, metal shavings, debris and/or residue from getting on the ground.

22. All actions taken by you to identify, eliminate, reduce, minimize and/or warn against the risk of harm associated with the operation of the pipe cutting/threading machine, including the discharge of oil or other substances onto the floor from the use of the pipe cutting/threading machine in Home Depot stores and/or from lubricated pipes cut or threaded in the machine.

23. All safety assessments and reports and/or other documents concerning safety assessments by Home Depot regarding or pertaining to the use of pipe cutting and/or threading machines in any of its store, including but not limited to the Home Depot store number 0386.

24. All JSAs (job safety analyses) concerning the use and operation of pipe cutting and/or pipe threading machines in any Home Depot store, including store number 0386.

25. The floor plan and layout of the Home Depot store number 0386 on the date of the Incident and the function of and activities conducted within each area of the store, including the activities conducted on Aisle 09 in that store; in any shop, room and/or maintenance area of the store; and in any area of the store where the pipe cutting or pipe threading machine was operated or could have been operated.

26. All internal memoranda and correspondence concerning the pipe cutting/threading machine in the Home Depot store number 0386 at any time from January 1, 2015 through the present date, including but not limited to concerning the positioning and location of the machine, or concerning the placement of any oil containment bin, pool, device, absorbent rock base, liner, taped-off area and/or other barrier or thing underneath or alongside the pipe cutting/threading machine.

27. All slip and fall incidents that occurred at the Home Depot store number 0386 at any time from July 12, 2014 through and including the present date in the vicinity of any pipe cutting or pipe threading machine involving customers, employees, vendors, subcontractors of the Home Depot and/or anyone else, and any actions taken to prevent future incidents from happening in that area.

28. All slip and fall incidents by anyone that occurred at any Home Depot store nationwide from, July 12, 2014 through the present date involving any pipe cutting and/or threading machines, or involving oil, debris, or residue from any such machine, and any actions taken by you to prevent future incidents from happening after those incidents.

29. Whether the spill, liquid or substance which caused plaintiff William Rester's slip and fall on July 12, 2019 was open and obvious to all and the basis(s) of your opinion in this regard,

including the facts, the fact witnesses, the expert witnesses and the exhibits relied upon by you.

30. All incident and investigation reports and/or documents of, for and regarding the Incident of July 12, 2019.

31. Whether Home Depot took any video recordings, audio recordings, and/or photographs of the Incident, and/or of Aisle 09 of the Home Depot store number 0386 at any time on July 11, 2019 or July 12, 2019.  If Home Depot has any such video recordings, audio recordings, or photographs, please produce them and be prepared to discuss them.  If any such video recordings, audio recordings, or photographs were taken but not preserved, why not?

32. The location of all cameras, all domes that could house cameras but were without cameras in them and all domes with unconnected and/or non-functioning and/or non-recording cameras in them in the Home Depot store number 0386 on July 12, 2019, the date of the incident in question.  Please also be prepared to discuss which cameras in the Home Depot store number 0386 were recording and which cameras were not recording on July 12, 2019, and explain why; and to identify all functioning/recording cameras, domes without cameras, and/or domes with unconnected, non-functioning and/or non-recording cameras in them in Home Depot store number 0386 on July 12, 2019 that recorded or could have recorded activities that day on Aisle 09 in the vicinity of Bay 013 identified as the location of William Rester's slip and fall.

33. If you contend that plaintiff William Rester was negligent in causing or contributing to the Incident of July 12, 2019 at issue in this action and/or his alleged resulting injuries, the alleged negligent acts and/or omissions of plaintiff, the factual basis(es) of this contention and the identity of each and every expert opinion, document and person relied upon in support of this contention.

34. If you contend that a third party(ies) was/were negligent in causing or contributing to the Incident of July 12, 2019 at issue in this action and/or plaintiff William Rester's alleged resulting injuries, the alleged negligent acts and/or omissions of plaintiff, the factual basis(es) of this contention and the identity of each and every expert opinion, document and person relied upon in support of this contention.

35. How the Incident occurred and what you contend caused it and the witnesses and exhibits that you contend supports your position in this regard.

36. Any and all surveillance of plaintiff William Rester, at any time, and the particular information for each and every surveillance conducted, including the date of the subject surveillance; the name, address(es) and employer(s) of person(s) conducting the surveillance and those persons present during the surveillance; whether any still photographs of the surveillance were taken; whether any video tapes or recordings of any surveillance were made; for each and every photograph and video tape or recording, the distance from which the photographs and/or video tapes or recordings were made, the lighting, the focal lengths, the camera angles, the speed, whether the action was slowed down or speeded up, the editing and splicing of any of the film, the use of stunt men and/or doubles and cropping.

37. For each and every affirmative and/or separate defense asserted by you in your answer to plaintiff's complaints, the identity of each and every person/witness, expert witness, document, fact and/or exhibit that you know, contend or believe, supports and/or justifies each and every such defense.

38. Each and every written statement, transcript of each oral statement and/or recording of each oral statement of any and all persons taken by you, your representative and/or attorney and/or in your possession, in connection with any and all of the matters which form the basis of and/or are relevant to this lawsuit and the date that each and every such statement was obtained.

39. All Root Cause Analyses and/or other analyses) [sic] made by or on behalf of you of or for the Incident of July 12, 2019, which is at issue in this action.  Discussion of the Root Cause Analysis(es) and/or other analysis(es) should include: (1) why there was a slippery substance on the floor?; (2) what was the source of the substance on the floor?; (3) how long was the substance on the floor?; (4) why Home Depot never cleaned up the substance before the fall?; (5) when was the floor last inspected?; (6) who had responsibility for inspecting the floor?; (7) who saw the slippery substance on the floor?; and (8) was the substance ever reported?  If Home Depot conducted no Root Cause Analysis, why not?

40. Your policies for document retention (including retention of any video recording, audio recording, and/or photograph), including your policies for retention of documents, video recordings, audio recordings, and photographs following any incident in which a person claims injury at or in a Home Depot store.

41. Any document you have been asked to identify and/or produce in plaintiff's written discovery to you and/or that you identified or were asked to identify through your initial disclosure, supplemental initial disclosures and discovery as of the date of this scheduled deposition that you have not produced to date.

42. You are requested to produce the documents listed, referenced, or alluded to hereinabove and/or which bear on the listed matters/areas of inquiry on which examination is requested, and to also testify about those documents.[19]

Home Depot provided its response to the ReNOD on March 1, 2021, and agreed to provide corporate testimony and responsive documents on four additional areas of inquiry—despite objection and even though they are extraneous to this case—and maintained objections as to areas outside the scope of these proposed topics which permeate the ReNOD:

A.  Home Depot's policies and procedures for slip and fall prevention in effect at the time of the incident alleged, including general spill/hazmat cleanup;[20]

B.  Identification of persons responsible for safety and/or risk at the Home Depot 0386 at the time of the incident alleged;[21]

C.  Any slip and falls on liquid on the floor of the interior shopping floor of the Home Depot 0386 reported by a customer or vendor during the 5 years preceding and including the date of the incident;[22]

D.  Policies and procedures for and general operation of the pipe threader machine and associated red can waste that were in effect at the time of the incident alleged;[23] and

---

[19]   *See* **Exhibit E**, ReNOD.

[20]   This is in response to and  was offered to reasonably tailor those requests included in Plaintiff's ReNOD Topics 4, 5, 6, 8, 9, 10(a)-(e), 11, 12, 13, 14, and 15. *See* **Exhibit F**, HD Response to ReNOD; **Exhibit H**, March 10, 2021 Letter.

[21]   This is in response to Plaintiff's ReNOD Topic 3(g). *See* **Exhibit F**, HD Response to ReNOD; **Exhibit H**, March 10, 2021 Letter.

[22]   This is in response to and was offered to reasonably tailor those requests included in Plaintiff's ReNOD Topics 7 and 27. *See* **Exhibit F**, HD Response to ReNOD; **Exhibit H**, March 10, 2021 Letter.

[23]   This is in response to and was offered to reasonably tailor those requests included in Plaintiff's ReNOD Topics 3(e)-(f), 10(e), 17, 18, 20, 21, 22, 23, 24, 25, 26, and 28. *See* **Exhibit F**, HD Response to ReNOD; *see* **Exhibit H**, March 10, 2021 Letter.

      E.      The placement and maintenance of the "rock garden" underneath the pipe threader machine at Home Depot 0386.[24]

These offered areas of inquiry encompass twenty-five (25) of the topics in the ReNOD, with prior witness testimony designated as to the facts of the underlying incident and investigation on an additional nine (9) topics.[25] As to fifteen (15) topics, Home Depot maintains its objections based on relevancy, lack of information, sweeping over breadth and lack of reasonable particularity, or because of attorney work product and attorney client privilege concerns.[26]

      Home Depot held a second discovery conference with counsel to again attempt to narrow the scope of the topics in accordance with Rules 30(b)(6) and 26.[27] Counsel refused, insisting the full scope of the ReNOD is appropriate. Now, in light of the necessity of this Motion, Home Depot objects to the relevancy of providing a corporate witness to testify regarding any hazmat slip and fall procedures, as there is no indication that they are implicated in this incident, and regarding the pipe threader machine in any capacity (above D and E), as there is absolutely no allegation of or indication that the pipe threader was involved in this incident. Despite Home Depot's concessions and attempted negotiations to avoid the Court's involvement, Plaintiff remains unwilling to appropriate tailor the scope of the ReNOD and, as such, Home Depot moves the Court for appropriate relief.

## **RELIEF REQUESTED**

      Home Depot requests the Court to quash and prohibit those topics that are overly broad, unduly burdensome, neither relevant to the issues in the case nor proportional to the factors set forth in Rule 26, which fail to be reasonable particular as required by Rule 30(b)(6), and/or which are

---

[24]   This is in response to and was offered to reasonably tailor those requests included in Plaintiff's ReNOD Topics 17, 18, 20, 21, and 26. *See* **Exhibit F**, HD Response to ReNOD; *see* **Exhibit H**, March 10, 2021 Letter.

[25]   *See* Section IV, *infra*. This is in response to Plaintiff's ReNOD Topics 1, 2, 3(a)-(c), 18, 29, 30, 31, 32, and 35. *See* **Exhibit F**, HD Response to ReNOD; *see* **Exhibit H**, March 10, 2021 Letter. Some of these Topics overlap with others.

[26]   The Topics of the ReNOD for which Home Depot has not agreed to produce a witness include Topics 3(d)-(f), 19, 23, 24, 25, 26, 33, 34, 36, 37, 38, 39, 40, 41, and 42. *See* **Exhibit F**, HD Response to ReNOD; *see* **Exhibit H**, March 10, 2021 Letter.

[27]   *See* **Exhibit A**, Good Faith Certificate.

intended only as a fishing expedition into speculative theories or undersigned counsel's mental impressions on this case. Specifically, Home Depot asks the Court to **quash** the following topics:

- Topics 3(e)-(f), 10(e), 17, 18, 20, 21, 22, 23, 24, 25, 26, 28 that seek discovery pertaining to the pipe threader machine in any way;

- Topic 3(d), seeking the identity of every person who worked in the plumbing department at the subject store for a year preceding the incident through present;

- Topic 32, requesting all camera locations, including "dummy domes," throughout the store;

- Topic 40, seeking generally all document retention procedures for all periods of time;

- Topics 29, 33, 34, 36, 37, 41, and 42, seeking details regarding bases for legal defenses, litigation surveillance, and generally regarding unspecified documents;

- Topics 1, 2, 3(a)-(c), 16, 29, 30, 31, 32, and 35 that are cumulative to previous testimony, regarding information on which Plaintiff has already received a response, and for which Home Depot has designated previous deposition testimony as its corporate testimony; and

- Topics 3(d), 17, 19, 34, 36, 38, and 39 that are cumulative to previous discovery and for which Plaintiff has already received the requested information.

Further, as to those topics which may be discoverable in a slip and fall case, Home Depot asks the Court to appropriately **limit and tailor** the scope of the inquiry as follows:

- As to Topics 4, 5, 6, 8, 9, 10(a)-(e), 11, 12, 13, 14, and 15—Home Depot's policies and procedures for slip and fall prevention in effect at the time of the incident alleged, excluding hazmat cleanup.

- As to Topic 3(g)—Identification of persons responsible for safety and/or risk at the Home Depot 0386 at the time of the incident alleged.

- As to Topics 7 and 27—Identification of any slip and falls on liquid on the floor of the interior shopping floor of the Home Depot 0386 reported by a customer or vendor during the 5 years preceding and including the date of the incident.

Limiting and quashing the proposed deposition as outlined herein effectively tailors the inquiry to the relevant issues to an alleged slip and fall on liquid in a shopping aisle of the Store.

## LAW AND ARGUMENT

Federal Rule of Civil Procedure 26 allows a party to obtain discovery on "any nonprivileged matter that is relevant to any party's claim or defense."[28] But, discovery is not limitless. Rule 26 also

---

[28] Fed. R. Civ. P. 26(b)(1).

includes a proportionality requirement, balancing the requested discovery against

> the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[29]

"[I]t is well established that the scope of discovery is within the sound discretion of the trial court."[30] As such, all discovery—including a corporate deposition—is bounded by the limits of relevancy when viewed under the lens of proportionality.

The court may, on motion or *sua sponte*, prohibit or limit the discovery where it is unreasonable, unduly burdensome, or is cumulative to other discovery.[31] Likewise, limiting the requested discovery is appropriate where the requesting party has had the opportunity to obtain the requested information in discovery in the matter.[32] Rule 26(c) empowers the court "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" through issuance of a protective order to forbid, limit, or prescribe an alternative method for the requested discovery.[33] Both Rule 26(b) and (c) authorize the court to appropriately limit discovery that is not relevant to the issues at hand or that is cumulative, duplicative, unduly burdensome, otherwise obtainable from a less burdensome source or for which ample opportunity for discovery has already been afforded. Home Depot suggests such conditions exist here. In light of the limits of discovery, Plaintiff's responsibility to be particular and reasonable the scope of the proposed deposition Home Depot suggests that a protective order limiting and prohibiting portions of the proposed deposition are appropriate in the instant case.

**I.    The Proposed Deposition Should be Limited in Large Part Based on the Failure of Plaintiff to Adhere to the "Reasonable Particularity" Requirement of Rule 30(b)(6).**

"Rule 30(b)(6) imposes burdens on both the discovering party and the designating party."[34] In

---

[29] Fed. R. Civ. P. 26(b)(1).
[30] *Scioneaux v. Elevating Boats, LLC*, CIV.A. 10-0133, 2010 WL 4366417, at *2 (E.D. La. Oct. 20, 2010) (Roby, J.).
[31] Fed. R. Civ. P. 26(b)(2)(C).
[32] Fed. R. Civ. P. 26(b)(2)(C).
[33] Fed. R. Civ. P. 26(c).
[34] *Johnson v. Big Lots Stores, Inc.*, CIV.A. 04-3201, 2008 WL 6928161, at *2 (E.D. La. May 2, 2008) (Vance, J.).

noticing a corporate deposition, Plaintiff has a duty to "describe with reasonable particularity the matters for examination."[35] The corporate deposition should be tailored to exclude those topics which are irrelevant, overly broad, overly burdensome, duplicative to other topics, cumulative to previous discovery, or harassing.[36] Plaintiff has not done so here and a request to quash or limit a Rule 30(b)(6) deposition is appropriate under such circumstances.[37]

Plaintiff's burden of proof in this case is straightforward: Under La. R.S. § 9:2800.6, Plaintiff must demonstrate that "(1) the condition which caused the injury created a foreseeable and unreasonable risk of harm; (2) the merchant had actual or constructive notice that the condition existed for a period of time prior to the accident; and (3) the merchant failed to exercise reasonable care."[38] Plaintiff alleges that a foreign substance on the floor of Aisle 9 was the cause of his incident on July 12, 2019.[39] Any topic that reaches beyond the subject Store or otherwise extends beyond the date of the incident in question on July 12, 2019, does not aid Plaintiff in demonstrating what was present on the floor of *this Store* and any alleged negligence of Home Depot *on the date of the incident in question*.

First, those topics seeking testimony about "nationwide" issues or otherwise extending beyond this Store should be limited.[40] Home Depot has been in business for more than 40 years and currently has over 1,900 stores nationwide; testimony extending beyond this Store is simply not relevant. For

---

35   Fed. R. Civ. P. 30(b)(6).

36   *In re Katrina Canal Breaches Consolidates Litig.*, 05-5531, 2008 WL 4833023, at *2 (E.D. La. July 2, 2008) (Wilkinson, J.) (granting protective order finding that 30(b)(6) topics were overly broad, vague, ambiguous, and duplicative to other topics).

37   *See Scioneaux,* 2010 WL 4366417 at *3 ("The Court, finds that stating that the topics of discussion will correlate with the document requests is too broad, vague, and ambiguous to properly comply with Rule 30(b)(6)."); *In re Katrina,* 2008 WL 4833023, at *2 ("These topics are worded so broadly, vaguely and ambiguously that they fail to 'describe with reasonable particularity the matters for examination,' as required by Rule 30(b)(6)."); *Padana Assicurazioni-Societa Azioni v. M/V Caribbean Exp.*, CIV. A. 97-3855, 1999 WL 30966, at *2 (E.D. La. Jan. 21, 1999) (Wilkinson, J.) (finding that the description of "the causes of the loss or damage to the cargo as described in the Complaint," was "insufficiently particularized").

38   *Coleman v. Wal-Mart Stores, Inc.*, 98-0124 (La. App. 1 Cir. 11/6/98), 721 So. 2d 1068, 1072; *see also* LA. REV. STAT. ANN. § 9:2800.6(B).

39   *See* R. Doc. 1, Complaint; *see* **Exhibit I**, Rester Deposition at 21:6-11.

40   *See* **Exhibit F**, HD Responses to the ReNOD, Topics 5, 21, & 28.

example, Topic 5, seeks testimony about the vague topics of "all steps and measures" with respect to *all* Home Depot stores, and apparently for all periods of time. To the extent a store in Idaho, for example, may have some other "step or measure" it may utilize is not relevant or discoverable, and no representative could have such information. Home Depot has nationwide policies and procedures pertaining to slip and fall prevention, and Home Depot has no objection to producing a corporate representative to testify about the ones in effect at the time of the incident.

Second, many of the topics do not specify a time frame or seek a time span that is either burdensome in its breadth or that extends after the date of the incident.[41] To the extent Plaintiff hopes to gain information about subsequent changes or accidents, as evidence of a need for warning or negligence in the instant matter, he should be precluded from doing so.[42] Topic 5, for example, can be appropriately limited, as Home Depot suggests, to those policies and procedures in effect *on the date of the incident alleged* pertaining to slip and fall prevention. Further, Topic 15 seeks "store walk summary documents" for two full years. Each "store walk summary" consists of multiple pages and Plaintiff's request spans 730 days; essentially, Plaintiff wants a corporate representative to testify regarding several thousand pages of documents on this *single* topic. Similarly, Topic 40 seeks discovery of all of Home Depot's document retention policies for all periods of time. As written, this would arguably include document retention policies for every type of document ever created by Home Depot, such as, vendor contracts, employment contracts, real estate and construction records, etc. Further, there is no implication in this case that document retention policies are at issue; any request for same is based on pure speculation.[43] Thus, the scope of the deposition should be limited to the date of the incident.

---

[41] *See* **Exhibit F**, HD Responses to the ReNOD, Topics 3(d)-(g), 7, 9, 13, 15, 26, 27, & 28. A number of topics further include no date range or timeframe whatsoever. **Exhibit F**, HD Responses to the ReNOD, Topics 5, 6, 21, & 40.

[42] *See* Fed. R. Evid. 407.

[43] *See, e.g., Martin v. Allstate Ins. Co.*, 292 F.R.D. 361, 364 (N.D. Tex.2013) (granting protective order on 30(b)(6) seeking document retention policies, finding no evidence or basis for the speculative claim that certain evidence had not been produced/retained).

Finally, many of the Topics fail in general to be "reasonably particular" as required by Rule 30(b)(6). For example, Plaintiff uses sweeping phrases like "any and all"[44] or "each and every"[45] in the ReNOD, which is overly broad.[46] Other examples include Topic 6, which is vague with respect to "guidelines and/or protocols, written and unwritten," and Topic 25, which seeks testimony on the "functions of and activities conducted" throughout the entire Store. Moreover, the description in Topic 6 of "inspections, maintenance, and/or cleaning" of the entire Home Depot at issue is vague and overly broad, lacks reasonable particularity as it encompasses any number of topics other than slip and fall prevention, including but not limited to inspections or maintenance of machinery, such as fork lifts or the compactor, racking inspections, parking lot maintenance or inspections, maintenance of the HVAC system, and cleaning that is not relevant to a slip and fall case alleging a foreign substance on the sales floor, such as routine cleaning of the restroom or sweeping the exterior lot. Home Depot continued to object, as it did to Plaintiff, to any topic which is vague, ambiguous, overly broad or otherwise not reasonably calculated to lead to the discovery of relevant evidence.[47]

The above references are *just a few examples* of how the ReNOD is wrought with over breadth by failing to be particular as to the scope, time frame, location, and subject matter of the information requested. Without specificity in the topics for examination, Home Depot is unable to realistically and effectively designate and prepare a corporate witness. In a corporate deposition, "unlike all other depositions, there is an implicit obligation to prepare the witness."[48] However, given the sheer number and breadth of topics sought by Plaintiff, Home Depot cannot properly prepare the corporate witnesses about every single aspect and sub inquiry of the approximately 70 topics at issue in the

---

[44] *See* **Exhibit F**, HD Responses to the ReNOD, Topics 19, 36, and 38.

[45] *See* **Exhibit F**, HD Responses to the ReNOD, Topics3(a)-(g), 33, 34, 36, 37, 38, and 39.

[46] *See St. Tammany Par. Hosp. Serv. Dist. No.1 v. Travelers Prop. Cas. Co. of Am.*, CV 07-01065, 2008 WL 11355015, at *3 (E.D. La. Apr. 25, 2008) (Roby, J.) ("To require a corporate employee to testify about 'all electronic databases' that Travelers maintains regarding all insurance claims similar to St. Tammany Hospital's is unwieldy, overboard, and amounts to an attempt to engage in a fishing expedition.").

[47] *See* **Exhibit F**, HD Responses to the ReNOD.

[48] 8A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedures § 2103 (3d ed.).

ReNOD, especially in light of the overreaching scope. In fact, Home Depot could open itself to a potential claim for sanctions for failing to appropriately prepare and designate a corporate witness to testify about "information known or reasonably available to the organization" if the proposed deposition is not appropriately limited.[49] In light of Home Depot's duty to properly prepare its deponent(s) to testify on the full scope of topics in the corporate deposition, as well as the failure of Plaintiff to be reasonably particular in the deposition request, Home Depot moves for a Protective Order to quash and/or limit those topics that fail to meet the basic requirements of Rule 30(b)(6).

## II. The Relevant and Appropriate Scope of Corporate Testimony in this Case Pertains Solely to A Slip and Fall on Liquid in the Store's Aisles

Home Depot seeks the Court to enter a Protective Order to limit the scope of the deposition to the issues relevant in this action, a routine slip and fall on an alleged foreign substance at the subject store on July 12, 2019. Specifically, Home Depot seeks limitation of Topics 5, 6, 8, 9, 10(a)-(e), 11, 12, 13, 14, and 15 to testimony concerning policies, procedures, and training pertaining to slip and fall prevention that were in effect on the date of the incident alleged (July 12, 2019). Further, Home Depot requests that Topics 7 and 27 to be limited to testimony concerning slip and falls on liquid on the floor in an aisle that were reported by a customer or vendor for the five years preceding and through the date of the incident alleged (July 12, 2014 through July 12, 2019).

### A. The Only Policies and Procedures Relevant to this Case are Those Pertaining to Slip and Fall Prevention Within the Interior of the Store that Were in Effect on July 12, 2019

The corporate deposition should be tailored to exclude those topics which are irrelevant, overly broad, overly burdensome, duplicative to other topics, cumulative to previous discovery, or harassing.[50] Plaintiff's scattershot request for corporate testimony should be limited to the pertinent

---

[49] Fed. R. Civ. P. 30(b)(6); *accord. Resolution Tr. Corp. v. S. Union Co., Inc.,* 985 F.2d 196, 198 (5th Cir.1993); *Brazos River Auth. V. GE Ionics, Inc.,* 469 F.3d 416, 433 (5th Cir. 2006) (noting the preparation needed by deponent in a corporate deposition).

[50] *In re Katrina,* 2008 WL 4833023, at *2 (granting protective order finding that 30(b)(6) topics were overly broad, vague, ambiguous, and duplicative to other topics).

issues in this case. Notably, Plaintiff's Topic 4 covers and specifically addresses this issue:

> 4.      The safety and/or other policies, practices, procedures, rules, standards, guidelines and/or protocols in effect on the date of the Incident related to slip-and-fall prevention at the Home Depot store number 0386

The remaining requests (Topics 5, 6, 8, 9, 10(a)-(e), 11, 12, 13, 14, and 15) exceed the scope of what is reasonable and relevant to the case. For example, Topic 8 requests:

> 8.      Identify all industry standards, laws, rules, regulations, guidelines, protocols and/or ordinances with respect to floor safety and walkway surfaces that you followed at Home Depot store 0386 before and on the date of the Incident.

This topic would have Home Depot prepare a corporate representative to give a legal and/or expert opinion on "industry standards, laws, rules, regulations, guidelines" for "floor safety and walkway surfaces."[51] Such testimony is inappropriate in a corporate deposition. "It is also generally prohibited for a lay witness to interpret statutes and to give legal opinions."[52] Much of the remaining topics highlight issues which would be appropriately addressed in questioning the witness on Home Depot's slip and fall prevention procedures in effect on the date of the incident, such as the opening walk checklist, cleanup procedures, responsibility for identifying hazards, and the like. Home Depot reiterates that each of these topics likewise bear on concerns pertaining to the scope/over breadth and relevancy. <u>As such, the suggested area of inquiry, to appropriately and reasonably tailor these topics, is: Home Depot's policies and procedures for slip and fall prevention in effect at the time of the incident alleged.</u>[53] However, <u>Home Depot specifically requests that any hazmat policies and procedures be excluded</u>, as there is no factual predicate for inquiring into hazmat spills.

---

[51]   Topic 8 also suffers from the same overbreadth concerns, as it seeks such testimony for all times the Store was in operation prior to the incident. *See* section I, *supra*.

[52]   *United States v. El-Mezain*, 664 F.3d 467, 511 (5th Cir.2011), as revised (Dec. 27, 2011); *see Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, CV 13-373-SDD-EWD, 2018 WL 2158769, at *5 (M.D. La. May 10, 2018), *aff'd*, CV 13-373-SDD-EWD, 2018 WL 5993471 (M.D. La. Nov. 14, 2018) (Corporate deposition "questions that require the representative to determine whether Plaintiffs' purported "established facts" constitute a violation of such policies veer too far into the field of expert testimony and opinion. . . . [and] also call for a legal conclusion or go to the ultimate issue.").

[53]   As noted, this is suggested to reasonably tailor those requests included in Plaintiff's ReNOD Topics 4, 5, 6, 8, 9, 10(a)-(e), 11, 12, 13, 14, and 15. *See* **Exhibit F**, HD Responses to the ReNOD.

### B.  The Only Incidents Relevant to this Case are Those Slip and Falls on Liquid on a Store Aisle Reported by a Customer or Vendor for Five Years Before the Incident

Plaintiff has included two topics that seek discovery of other slip and fall incidents, to which Home Depot objects as overly broad and lacking relevancy:

> 7.     All slip and fall accidents that occurred in the Home Depot store number 0386 at any time from January 1, 2014 through the present date.

> 27.     All slip and fall incidents that occurred at the Home Depot store number 0386 at any time from July 12, 2014 through and including the present date in the vicinity of any pipe cutting or pipe threading machine involving customers, employees, vendors, subcontractors of the Home Depot and/or anyone else, and any actions taken to prevent future incidents from happening in that area.

First, both requests, as others previously mentioned, seek information about incidents that occurred *after* the incident alleged on July 12, 2019. Home Depot suggests the appropriate scope of the inquiry is five (5) years before and including the date of the incident (July 12, 2014 through July 12, 2019). Second, Topic 7 seeks information about slip and falls throughout the store, which would include areas that have no bearing on the facts of this case, such as outside garden, the lot, the cash registers, and the restroom. Third, both topics fail to specify the type of slip and fall; as written it could involve any slip and falls on debris or an object. Here, Plaintiff alleges a slip and fall on liquid.[54] Fourth, both topics purport to include incidents involving employees, to which Home Depot objects. Employees (and frankly, vendors too) are exposed to different hazards than customers and should not be used as a comparison or parallel to incidents involving customers. For example, Home Depot employees use ladders and equipment, handle various materials and tools, and have access to parts of the Store into which customers do not. To include employee claims within the scope injects factually dissimilar circumstances and intrudes upon relevancy concerns. As such, the suggested area of inquiry, to appropriately and reasonably tailor these topics is: Identification of any slip and falls on liquid on the floor of a shopping aisle that were reported by a customer or vendor during the five years preceding

---

[54]   *See* R. Doc. 1, Complaint at ¶ IV; **Exhibit I**, Rester Deposition at 21:6-11.

and through the date of the incident alleged (July 12, 2014 through July 12, 2019).

## III. A Corporate Deposition Is Not for Testing or Discovering Legal Theories

"Rule 26(b) 'has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition.'"[55] A significant portion of the proposed deposition includes topics that seek to test new theories of the case or otherwise discovery defense strategy. Plaintiff should be prohibited from doing so. Any topics that pertain to the pipe threader machine, to litigation or defense specifics, or to the CCTV system are simply seeking to set out on a speculative expedition.

### A. The Pipe Threader Topics Are Red Herrings and Amount to Nothing More Than A Fishing Expedition

A corporate deposition is not the place to test legal theories. The theory that the pipe threader machine is somehow relevant to this case was manufactured following the deposition of the plumbing department supervisor, Wayne Robinson, who testified that a store inspection document happened to have noted that the pipe threader's trash can, located at least 10 feet from the incident location, had been emptied that morning—that is it.[56] He specifically testified that the pipe threader isn't used every day.[57] He also explained that the oil used by the machine is self-contained, with some residual oil being wiped from the pipe after the threading process is complete.[58] Robinson also testified that if any of the pipe threading machine oil drips on the floor, it's not usually more than a drop or two, and it wipes up easily without leaving any residue.[59] Importantly, there is no witness testimony or other evidence that any oil was on the floor at the time of Plaintiff's incident.[60] Plaintiff cannot point to a single witness or fact that suggests the pipe threader machine has anything to do with the incident alleged.

---

[55] *Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir.2011) (quoting *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir.2010)).
[56] *See* **Exhibit L**, Robinson Deposition at 40:5-42:1.
[57] *See* **Exhibit L**, Robinson Deposition at 41:12-19.
[58] *See* **Exhibit L**, Robinson Deposition at 42:2-44:21.
[59] *See* **Exhibit L**, Robinson Deposition at 46:5-47:10.
[60] *See* **Exhibit I**, Rester Deposition at 21:6–11, 25:8-22, 61:11-17; **Exhibit J**, Fontenot Deposition at 23:19-24:15; **Exhibit K**, Weatherhead Deposition at 46:3-8, 66:12-67:21.

The proposed deposition includes a large segment of questions—Topics 3(d)-(f), 10(e), 17, 18, 20, 21, 22, 23, 24, 25, 26, 28—that seek testimony, information, and documentary evidence pertaining to the pipe threader machine.[61] However, for purposes of this Motion and proceeding forward in this matter,

Notably, two of the pipe threader topics—topic 23 and 24—seek discovery of "safety assessments" or "job safety analyses" regarding the "use of the pipe threader machine."[62] These topics have absolutely no bearing on the facts of this case. There is no evidence that implicates the pipe threader in Plaintiff's incident, let alone that it was in operation sometime around the time thereof. Further, only store associates may operate the pipe threader machine. A JSA or safety assessment concerning the operation of the pipe threader would pertain principally to the safety of the *operator*, which would inevitably be a Home Depot associate, not a customer.[63] Plaintiff was not purchasing pipe or awaiting a pipe to be threaded at the time; nor is there even evidence the pipe threader machine was being used at or near the time of the alleged incident.[64] Nothing in these two topics, or in the remaining topics on the pipe threader, have anything to do with the subject matter of this action, as there is not a single piece of evidence to suggest that Plaintiff slipped in oil, that the pipe threader had been in use prior to the incident, that oil had dripped on the floor of the subject aisle, or that would otherwise render the pipe threader germane to this case. As such, any testimony concerning the pipe threader machine is not at issue in the case and should be excluded from the deposition testimony.

## B. Those Topics Concerning Legal Defenses, Litigation Details, or Otherwise Addressing Defense Legal Theories Should be Excluded

Home Depot objects to several of the topics proposed by Plaintiff—Topics 29, 33, 34, 35, 36, 37, 39, 41, and 42—as they encroach upon protected attorney work product and attorney client

---

61   *See* **Exhibit F**, HD Responses to the ReNOD.
62   *See* **Exhibit F**, HD Responses to the ReNOD, Topics 23 and 24.
63   *See, e.g., Seaman v. Seacor Marine, L.L.C.*, CV 07-3354-JCZ-SS, 2008 WL 11452431, at *3 (E.D. La. Mar. 17, 2008) (Shushan, J.) (declining to compel discovery of JSA in maritime injury case).
64   Plaintiff couldn't even recall what aisle the incident occurred on and there is no testimony that he was there to have pipe threaded. *See* **Exhibit I**, Rester Deposition at 16:18-20, 19:20-20:19; **Exhibit J**, Fontenot Deposition at 19:14-19, 23:1-22.

privilege, as well as attempt to discover, under the guise of a corporate deposition, defense strategy in

the case. "Even under the present-day liberal discovery rules, [Home Depot] is not required to have

counsel 'marshal all of its factual proof' and prepare a witness to be able to testify on a given defense

or counterclaim."[65] More importantly, Plaintiff already *has* this information, as it was supplied via

contention interrogatories.[66] Two of the topics (41 and 42), specifically seek information concerning

any documents that were considered, but not produced, in the litigation or otherwise generally bear

on the 42 sweeping topics in the ReNOD. Topics 35 and 39 likewise seek discovery of defense strategy

through testimony on identifying witnesses and exhibits to be used at trial and discussion of any

"analyses" regarding causation for the incident. Such requests are thinly veiled attempts to determine

defense strategy and themes, and attempt to grasp additional evidence which otherwise is not

reasonably particularized throughout the remainder of the ReNOD. When the nature of the topics set

forth in a corporate deposition notice is such that the notice essentially seeks the "deposition of the

opposing counsel or practical equivalent thereof," courts "generally take a critical view of such a

tactic."[67] Home Depot requests the Order preclude the discovery noted herein as improper, overly

broad, cumulative to the previously answered contention interrogatories, and not reasonably

---

[65]   *Asevedo v. NBCUniversal Media, L.L.C.*, CIV.A. 12-2005, 2013 WL 3155206, at *4 (E.D. La. June 19, 2013) (Knowles, J.) (quoting *In re Indep. Serv. Org. Antitrust Litig.*, 168 F.R.D. 651, 654 (D.Kan.1996)); *accord. Am. Nat. Red Cross v. Travelers Indem. Co. of Rhode Island*, 896 F.Supp. 8 (D.D.C.1995) (finding that 30(b)(6) questions on the "facts and documents which Travelers contend support" defenses "intruded upon protected work product; in effect, what ARC was requesting was insight into Travelers' defense plan."); *see also JPMorgan Chase Bank ex. rel. Mahonia Ltd v. Liberty Mutual Ins. Co.*, 209 F.R.D. 361, 363 (S.D.N.Y. 2002) (finding that under the "guise of facts," sought in a 30(b)(6) deposition, the plaintiff was really seeking the defendants' mental impressions, conclusions, opinions and legal theories, which is "classic work product" and shielded from discovery.); *Neponset Landing Corp. v. Northwestern Mutual Life Ins. Co.*, 297 F.R.D. 59, 61 (D. Mass. 2011)(30(b)(6) witness not required to testify as to basis for affirmative defenses as a "lay witness should not be expected to testify as to how any such facts form the basis of a legal affirmative defense. [D]epositions, including 30(b)(6) depositions, are designed to discover facts, not . . . legal theories[.]")) (citations omitted).

[66]   *See* **Exhibit D**, Home Depot Answers to Interrogatories No. 11, 13, 14 and Requests for Production No. 5 and 6; *see also* **Exhibit G**, Home Depot's Supplemental Answers to Interrogatories No. 11 & 14. *See, e.g., Tiemann v. Yeres*, A-18-CV-301-LY, 2019 WL 919013, at *3 (W.D. Tex. Feb. 22, 2019) (noting that some information is more appropriately gathered through contention interrogatories or expert discovery, as opposed to a 30(b)(6) deposition).

[67]   *F.T.C. v. U.S. Grant Resources, LLC*, No. 04-596, 2004 WL 1444951, at *10 (E.D. La. June 25, 2004) (Knowles, J.) (citing *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 (5th Cir. 1999); *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986); *Johnstone v. Wabick*, 220 F.Supp.2d 899 (N.D. Ill. 2002); *Marco Island Partners v. Oak Dev. Corp.*, 117 F.R.D. 418 (N.D. Ill. 1987)).

particularized.

### C. Plaintiff's Topic 32 on CCTV is Overly Broad, Fails to Meet the Relevancy Requirements, and is Cumulative to Previous Testimony on the Same Issue

Plaintiff also seeks sweeping discovery as to the entire CCTV system within the Store on the date of the incident alleged.

> 32.     The location of all cameras, all domes that could house cameras but were without cameras in them and all domes with unconnected and/or non-functioning and/or non-recording cameras in them in the Home Depot store number 0386 on July 12, 2019, the date of the incident in question.  Please also be prepared to discuss which cameras in the Home Depot store number 0386 were recording and which cameras were not recording on July 12, 2019, and explain why; and to identify all functioning/recording cameras, domes without cameras, and/or domes with unconnected, non-functioning and/or non-recording cameras in them in Home Depot store number 0386 on July 12, 2019 that recorded or could have recorded activities that day on Aisle 09 in the vicinity of Bay 013 identified as the location of William Rester's slip and fall.

The request seeks not only each and every camera within the Store, but all housing units, including those which have no camera, as well as reasoning behind populating certain housing units over others. The incident occurred in one discrete location at the subject store, thus, more details about the highly confidential CCTV system throughout the entire store is not discoverable or relevant. In addition to this information being completely irrelevant to the underlying dispute, Plaintiff has already obtained deposition testimony from the Store's Asset Protection Specialist, Corey Crowe, who has personal knowledge of the cameras in this Store and reviewed the video relative to this incident.[68]

Crowe has already testified as to whether the incident was not captured on store surveillance footage (CCTV).[69] Plaintiff was also given great latitude in Crowe's deposition to inquire about "dummy domes," various camera angles that could potentially to capture the incident in question, and the manner in which video is reviewed and saved following a customer incident.[70] Further, Home

---

[68]   *See* **Exhibit M**, <u>under seal</u>, Crowe Deposition at 18:5-8, 29:3-19, 35:17-36:19.

[69]   *See* **Exhibit M**, <u>under seal</u>, Crowe Deposition at 29:3-19, 35:17-36:19, 43:22-44:6.

[70]   *See* **Exhibit M**, <u>under seal</u>, Crowe Deposition at 29:3-19, 35:17-36:19.

Depot has specifically designated the portions of Crowe's testimony on CCTV issues as its corporate testimony. Crowe would likely be Home Depot's corporate representative concerning CCTV at the Store at the time of the incident and Plaintiff should not be allowed a mulligan under the pretext of a corporate deposition. In short, Plaintiff already has the relevant requested information related to the subject incident.

Even so, the request is wholly outside the bounds of relevancy to this case and the requested topic fails to identify the requested topic with reasonable particularity; Plaintiff has no valid reason to scrutinize the details of the entire Store's CCTV system. Home Depot utilizes its CCTV system as a theft deterrent, which involves highly sensitive and confidential information, including the exact location of all cameras within the store and identification of those non-working "dummy domes."[71] Although a confidentiality order is in place, Home Depot nevertheless objects to such sweeping testimony regarding the location of *all* cameras within the store, as such testimony, could compromise the integrity and security of the entire system. Given this risk, and the lack of relevancy of the entire store's CCTV to this case—particularly when considering that Plaintiff has already obtained this information from the person most knowledgeable on the topic—Home Depot requests this Topic be quashed.

## IV. The Court Should Not Allow Those Topics that are Duplicative or Cumulative to Previous Testimony and Discovery

As has been referenced throughout this Motion, Plaintiff seeks corporate testimony in large part on topics for which the information is already in hand and cumulative to previous discovery, or otherwise is duplicative to other topics and discovery requests. Plaintiff has already deposed four employees, including the Store manager, the asset protection specialist, and the relevant department supervisor. As such, Home Depot seeks that any Order appropriately limit the discovery because "it

---

[71]     *See* **Exhibit M**, <u>under seal</u>, Crowe Deposition at 30:8-31:11, 33:5-35:15.

is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; [and] the party seeking discovery has had ample opportunity to obtain the information by discovery in the action."[72] Specifically, Home Depot requests the Court to prohibit the following topics as cumulative, duplicative, requesting evidence which Plaintiff already possesses, and/or for which Home Depot has designated previous testimony as corporate testimony—Topics 1, 2, 3(a)-(d), 16, 17, 19, 29, 30, 31, 32, 35, 36, 38, and 39. To seek corporate testimony to parrot back information which Plaintiff already has regarding the facts surrounding the incident, or to otherwise allow Plaintiff second chance at the same testimony, is inappropriate.[73] For these topics, Plaintiff already has the information *and* Home Depot has designated such testimony as its corporate testimony. As such, the Court should prohibit Plaintiff from using a corporate deposition in such a manner.

## V.     Home Depot Requests Relief for the Necessity of Filing the Instant Motion

To the extent the Court deems this Motion appropriate and well-founded, Home Depot requests relief under Rule 26(c)(3) and Rule 37(a)(5)(A). Home Depot has properly attempted to resolve this dispute with Plaintiff in good faith.[74] Should the Court grant the Protective Order, Home Depot seeks relief under Rule 37(a)(5)(A), finding that the requisites for filing the Motion have been established and that Home Depot is entitled to relief.

## <u>CONCLUSION</u>

Plaintiff's proposed deposition of Home Depot falls outside the bounds of permissible discovery under Rule 26 and fails to meet the requirements set forth in Rule 30. To be clear, Home Depot does not seek to avoid a corporate deposition, but rather asks the Court to tailor the proposed

---

[72]   Fed R. Civ. P. Rule 26(b)(2)(C).

[73]   *See Gossar v. Soo Line R. Co.*, 3:09-CV-9RLYWGH, 2009 WL 3570335, at *6 (S.D. Ind. Oct. 27, 2009) (granting a protective order finding that witness testimony about the facts surrounding the incident is "best evidence" and "requiring a corporate representative to testify as to this information would be unduly duplicative.").

[74]   *See* **Exhibit A**, Good Faith Certificate.

deposition to the relevant issues in a standard slip and fall case. The United States Court of Appeals for the First Circuit has artfully described the appropriate scope of discovery:

> [P]arties have a correlative obligation to tailor [discovery] to suit the particular exigencies of the litigation. **They ought not to be permitted to use broadswords where scalpels will suffice, nor to undertake wholly exploratory operations in the vague hope that something helpful will turn up**."[75]

Home Depot asks the court to exclude those topics that pertain to speculative issues or otherwise constitute a fishing expedition, are cumulative or duplicative to other discovery or previous deposition testimony, or simply seeks repetition of information that is already in Plaintiff's possession. The ReNOD fails to meet the general principles under Rules 26 and 30 and should be limited as requested herein.

Respectfully submitted,

_____/s/ Megan S. Peterson_____

M. Davis Ready, T.A. (Bar No. 24616)
Daniel J. Caruso (Bar No. 3941)
Megan S. Peterson (Bar No. 34026)
SIMON, PERAGINE, SMITH & REDFEARN, L.L.P.
1100 Poydras Street, 30th Floor
New Orleans, Louisiana 70163
Telephone: (504) 569-2030
Facsimile:  (504) 569-2999
Email:      davisr@spsr-law.com
            danc@spsr-law.com
            meganp@spsr-law.com
**Attorneys for Home Depot, U.S.A., Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all known counsel of record by facsimile, by e-mail, by hand-delivery, or by placing a copy of same in the United States mail, postage prepaid and properly addressed, this **16th** day of **March**, 2021.

_____/s/ Megan S. Peterson_____

---

[75] *Mack v. Great Atl. & Pac. Tea Co., Inc.*, 871 F.2d 179, 187 (1st Cir.1989) (emphasis added).